Ora Dell REDDITT, individually, and on behalf of all other similarly situated, Plaintiff-Appellant,

v.

MISSISSIPPI EXTENDED CARE CENTERS, INC., Defendant-Appellee.

No. 82–4377.

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1983.

**1382**

Willie J. Perkins, Sr., North Mississippi Rural Legal Services, Greenwood, Miss., Leonard McClellan, Oxford, Miss., for plaintiff-appellant.

Earl Keyes, Jackson, Miss., for defendant-appellee.

Before BROWN, WISDOM and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Ora Dell Redditt, a black nurse's aide at Care Inn Nursing Home in Grenada, Mississippi (Care Inn Grenada), brought this action against defendant, Mississippi Extended Care Centers, Inc., alleging that she was discriminatorily discharged on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and of 42 U.S.C. § 1981. The district court denied class certification and dismissed plaintiff's individual claim. On appeal plaintiff contends that the district court erred both in dismissing her individual claim and in denying her motion for class certification to represent all black employees allegedly discriminated against in hiring, discharging, promotions and all other terms and conditions of employment. We vacate the judgment of the district court for failure to comply with Fed.R.Civ.P. 52(a) and 23(a) and remand.

I. *Background*

Care Inn Grenada is a nursing home operated by defendant Mississippi Extended Care Centers, Inc. since February 1971. Care Inn Grenada hired plaintiff Redditt as a nurse's aide in August 1972. Almost five years later, on July 14, 1977, a charge was brought against plaintiff by Norene Clements, a nonemployee sitter at the nursing home. Clements alleged that plaintiff hit the back of a male patient's hand with his shoe because he was trying to help himself have a bowel movement. Plaintiff denied

striking the patient. Plaintiff's and defendant's versions of the details of the incident vary greatly. Briefly, plaintiff and Earline Jones, another nurse's aide, had helped the patient to the bathroom when a patient across the hall called out to Jones to get him some ice. Jones left the room for a minute or less to get the ice and when she returned Clements was standing in the doorway or was on her way out of the room. Clements had entered the room to ask plaintiff to help her put Clement's patient, who was on the same floor as plaintiff's patient, to bed. The physical abuse of plaintiff's patient allegedly occurred during the brief interval when Jones had left the room. Another patient, John Morris, shared the room with plaintiff's patient, but a curtain separated the two men so that Morris could not have seen what actually happened. Clements testified that when plaintiff's patient began yelling after he was struck, both Sue Harris, a licensed practical nurse (L.P.N.), and Jones rushed back to the room. Harris had been in the room previously to give plaintiff's patient his medicine, but the testimony varied as to when Harris was in the room. Plaintiff contends that when Jones returned to the room, Harris was also present. Harris testified that she did not witness the incident but reported that she examined the patient's hand as soon as the incident was reported to her and again the next day. On her first examination she found the patient's hand to be red and on the second examination she found a bruise.

Clements reported the alleged incident to Harris, and Harris reported it to Larry Parks, the administrator at Care Inn Grenada. That evening Parks called plaintiff into his office to discuss the incident. Plaintiff denied striking the patient and requested that Parks call all people involved to his office, especially Clements. In addition to talking to Sue Harris about the incident, Parks talked to Jones who stated that she did not see plaintiff strike the patient. According to Jones, Parks did not ask her any other questions about the incident. Parks testified that he also talked to Morris who stated that he did not see plaintiff strike the patient but that he did hear the patient yell. Parks did not question Clements about the incident until after the E.E.O.C. investigation had begun and offered no explanation for his not doing so.[1] Parks testified that he did not question the patient about the incident because Parks felt that he was too senile to know what had happened. According to Parks, he did not want to make a snap judgment and took the matter under advisement. According to plaintiff, Parks told her to forget about the incident.

On July 24, 1977, plaintiff was involved in a second incident which was reported to Parks by Sue Harris. Harris' version was that she gave plaintiff an order which plaintiff initially refused to obey. According to Harris, she asked plaintiff to get some help to bring a male patient who had wandered out of the building back into the nursing home; plaintiff responded that she was tired of the whole business and didn't care if the patient got back inside, but eventually did go get several aides to help Harris. Plaintiff denied refusing to assist Harris. According to plaintiff, Harris and another L.P.N., Lois Johnson, had told plaintiff that they would tend to the patient and if he got outside they would let plaintiff and other aides know about it. While plaintiff was putting a tray on a cart in B Wing, Annie Jones, another nurse's aid, told plaintiff that Johnson had said the patient had gotten outside and they needed assistance in getting him back inside. Jones and plaintiff then took the geriatric chair outside where Harris, Johnson, and the patient were waiting. Plaintiff claimed that two other aides and another L.P.N. were also present. Plaintiff testified that she then assisted in bringing the patient

---

1. It appears from the testimony that Parks would have benefitted from discussing the incident with eyewitness Clements at an earlier date. Clements testified at trial that when she questioned plaintiff's patient about his bruised hand the day after the incident, he remembered that plaintiff had struck his hand with a shoe. In addition, Clements testified that the patient also remembered the incident several days after it occurred.

back inside. Annie Jones' version was basically the same as plaintiff's, although on cross-examination Jones conceded that she could not know whether plaintiff had already been outside before Jones came to B Wing to solicit plaintiff's help.

Following this second incident, Parks called plaintiff into his office; she denied the charge of insubordination to Harris. According to plaintiff, when she asked Parks to call in the witnesses to the incident, he responded that he did not have time to be bothered. Parks then sent plaintiff home. Ten days later, on August 4, 1977, he called plaintiff back to his office to talk. According to plaintiff, Parks said that he would have a witness present. When plaintiff arrived, however, and asked where the witness or witnesses were, Parks replied that he did not "need any damn witnesses." Parks did not deny making this statement, although he did deny using abusive language in that particular context.[2] At trial Parks did not make any claim that he interviewed witnesses to this incident. Annie Jones testified that Parks never questioned her about the incident. During the meeting of August 4, Parks terminated plaintiff on the basis of the two charges against her—physical abuse of a patient and insubordination. Plaintiff asked Denver Northrip, the area nursing home administrator, to look into the matter. Northrip, however, testified that he simply relied on the information Parks had given him about plaintiff's discharge and did not interview any of the persons involved.

In that same month, August 1977, plaintiff filed a charge of discrimination with the E.E.O.C. and received a right-to-sue letter in August 1979 and the E.E.O.C.'s determination of reasonable cause to believe plaintiff was discharged on the basis of her race in violation of section 704(a) of Title VII. On November 5, 1979, plaintiff brought this suit as a class action, asking for declaratory relief, injunctive relief, reinstatement in full, damages, and costs. Plaintiff's complaint alleged that defendant discharged plaintiff because she was black, under the pretext of physical abuse of a patient and insubordination. Her complaint also alleged that defendant maintained an on-going policy, pattern, and practice of discrimination against blacks in hiring, discharging, promoting and other employment practices. Plaintiff sought to represent a class of blacks pursuant to Rule 23(b)(2) who were victims of the racial discrimination practiced by defendant.

On February 11, 1981, after an evidentiary hearing, the district court rendered a bench opinion conditionally denying class certification. The order was entered on February 12, 1981. The court refused to certify the class on the basis of the insufficiency of plaintiff's evidence to show that defendant practiced racial discrimination. The court stated that plaintiff must establish by a preponderance of the evidence that defendant practices racial discrimination in order to bring an action in favor of a class.

At trial plaintiff relied largely on statistics to establish that a class of blacks existed which had been subjected to disparate treatment by defendant. To prove her individual claim plaintiff presented evidence of white employees who engaged in conduct which constituted grounds for termination according to defendant's rules and yet received several warnings (disciplinary actions) prior to termination or received thorough investigations of the charge prior to termination.[3] Plaintiff presented evidence that she had had an unblemished work record for almost five years until the two incidents for which she was terminated occurred in July 1977.

The judge who presided at the hearing died before the trial began. After reviewing a transcript of the class certification

---

2. Parks taped his conversation with plaintiff but the tape was unavailable for trial. The explanation given was that at some point after Parks received notice of the instant suit, children of a friend taped country and western music over Parks' conversation with plaintiff.

3. Additional class proof also included evidence that black employees were terminated immediately following their first infraction without receiving any prior warnings.

hearing and hearing plaintiff's additional class proof, the district court refused to reverse the denial of class certification. As reasons for the decision, the court cited an insufficiency of proof of disparate treatment between blacks and whites in defendant's various employment practices. The court also rejected plaintiff's individual claim of discrimination, finding that defendant had successfully rebutted plaintiff's prima facie case of discrimination by articulating a legitimate reason for plaintiff's discharge and that plaintiff had failed to prove that defendant's reason was a mere pretext for racial discrimination.

On appeal plaintiff challenges both the dismissal of her individual claim and the denial of class certification. With respect to her individual claim, she argues that defendant did not rebut her prima facie case, or alternatively, that she demonstrated that the reasons proffered for her termination were pretextual. With respect to her class claim, she argues that the district court erred in failing to evaluate her class claim under Fed.R.Civ.P. 23.

## II. *The Individual Claim*

■ In a disparate treatment case involving an individual's claim of discriminatory discharge, the plaintiff initially bears the burden of proving a prima facie case of discrimination. If the plaintiff succeeds, the burden of production shifts to the employer to rebut the presumption of discrimination by producing evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason. If defendant successfully rebuts the presumption of discrimination, the plaintiff must demonstrate that the proffered reason was not the true reason for plaintiff's discharge but was instead a mere pretext for discrimination. Throughout the trial the plaintiff bears the ultimate burden of persuasion that she has been a victim of intentional discrimination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Findings of discrimination and discriminatory intent are subject to the clearly erroneous standard of review. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

■ The district court found that plaintiff had met her burden of establishing a prima facie case of disparate treatment under the principles of *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court further found that defendant had articulated legitimate reasons for plaintiff's discharge—physical abuse of a patient and failure to follow the instructions of a superior. Plaintiff's contention that defendant failed to rebut her prima facie case is not well-founded. All the employer need do is to raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine,* 101 S.Ct. at 1094. The defendant raises a factual issue by introducing into evidence a clear and reasonably specific legally sufficient explanation for the discharge of the employee. *Id.* In the instant case the two reasons given—physical abuse and insubordination—justified plaintiff's discharge according to defendant's policy as stated in the employee handbook. Indeed, the defendant need not persuade the court that it was actually motivated by its proffered reasons for discharge; defendant need only raise a genuine factual issue by clearly explaining the nondiscriminatory reasons for its actions. *Id.* 101 S.Ct. at 1094 and 1097.

■ Plaintiff's contention that the district court erred in not finding that defendant's proffered reasons for her discharge were in fact pretext raises cause for concern. The plaintiff succeeds in demonstrating that defendant's proffered reason was not the true reason for her discharge "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* 101 S.Ct. at 1095. To show pretext plaintiff introduced evidence of numerous white employees who engaged in conduct constituting cause for dismissal and yet only received warnings or disciplinary actions. Plaintiff also intro-

duced evidence that several blacks were terminated after their first infraction of the rules without receiving prior warnings. In addition, plaintiff introduced evidence that a white nurse's aide who had also been discharged for physical abuse of a patient received a thorough investigation of the incident, including statements taken from all eyewitnesses, prior to her termination. In an effort to rebut plaintiff's evidence of pretext defendant presented evidence that whether an individual received a warning prior to termination depended on the degree of insubordination; that the two employees—plaintiff and a white—who physically abused patients were both discharged; that a black employee who was terminated had failed to contact the area administrator as he had been instructed to do;[4] that two other black employees were warned and not immediately terminated.[5]

Thus, both plaintiff and defendant presented evidence relevant to the crucial issue of pretext. The district court, however, made no more than a conclusory finding on this issue. The court stated: "A number of both black and white employees have testified in this case that blacks were not treated any differently than whites." This conclusory finding in no way indicates the factual basis for the court's conclusion. Indeed, most of the statements by witnesses that blacks and whites were treated alike were merely conclusory statements given in response to the general question whether both races were treated the same. Some of these statements were directed to issues other than discriminatory discharge, e.g., discrimination in hiring. None of these statements were directed specifically to the issue at hand—discrimination in discharge demonstrated through inadequate investi-

gations of incidents involving blacks or no warnings given to blacks.[6] Fed.R.Civ.P. 52(a) proscribes conclusory findings such as the one-sentence finding on the issue of pretext which the court made in the instant case.[7] *Corley v. Jackson Police Dept.,* 566 F.2d 994, 1000 n. 8 (5th Cir.1978). The court's brief finding fails to clearly reflect a choice between conflicting testimony. The court made no findings relative to whether the investigation in plaintiff's case was conducted less thoroughly than were the investigations in cases where whites were discharged or whether whites who committed acts constituting cause for dismissal consistently received warnings prior to termination whereas plaintiff did not. In other words, except for its conclusory statement, the court made no findings with respect to disparate treatment of blacks and whites concerning warnings and investigations prior to termination. In reviewing the district court's finding of no discrimination under the clearly erroneous standard, this Court cannot be left to second guess the factual basis for the district court's conclusion. This Court cannot determine whether the district court's finding that plaintiff failed to demonstrate pretext was clearly erroneous when the district court's finding is not expressed with sufficient particularity. It is not the function of this Court to make credibility choices and findings of fact. We are therefore left with no choice but to vacate the judgment of the district court for failure to comply with Fed.R.Civ.P. 52(a) and remand for findings of fact which indicate the factual basis for the district court's conclusion on the issue of pretext. On remand, after a careful evaluation of the relevant evidence, the district court is of course free to change, modify, or reassert

**4.** Plaintiff presented contradictory evidence on this point.

**5.** Defendant's evidence that both blacks and whites were discharged for similar reasons does not go to the issue of pretext. Plaintiff does not contend that blacks were discharged for different reasons than whites but that blacks were discharged without prior warnings or without thorough investigations of the alleged incidents whereas whites were not.

**6.** Some of the conclusory statements alleging equality of treatment were given by defense witnesses Sue Harris, Denver Northrip, and Allie Mae Duke (an L.P.N.), as well as plaintiff's witness Annie Jones.

**7.** Rule 52(a) requires that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts especially and state separately its conclusions of law thereon...."

its ultimate conclusion relative to pretext. It is for the illumination of the court only that this Court notes that the record evidence demonstrating pretext was substantial. If the district court adheres to its former conclusion that plaintiff failed to show that defendant's proffered reasons for her discharge were pretextual, the court should exercise great care that its findings clearly express the factual basis of its conclusion.

### III. *The Class Claim*

■ Plaintiff contends that the district court erred in denying class certification in that the court applied an incorrect standard—a preponderance of the evidence standard—to make the Rule 23 determination. Plaintiff argues that the decision whether to certify a class must be based solely on the requirements of Rule 23 itself and should eschew any inquiry into whether the class will prevail on the merits.

Before considering plaintiff's contentions, this Court notes that *General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) prohibits plaintiff, who alleges only discrimination in discharge, from mounting an across-the-board attack on defendant's employment practices. Under *Falcon,* plaintiff cannot serve as class representative with respect to hiring, promotion, or any other employment practices excepting discriminatory discharge because she does not possess the same interest and did not suffer the same injury as the other members of the class. Accordingly, she cannot meet Rule 23's requirements of commonality and typicality. The only potential class which plaintiff could represent would be the class of employees who have been discharged on the basis of race. It is in light of possible representation of this class, therefore, that we evaluate plaintiff's contentions.

■ The decision to grant or deny certification is initially committed to the sound discretion of the district judge and will not be overturned except for abuse of discretion. *Horton v. Goose Creek Independent School District,* 690 F.2d 470 (5th Cir.1982).

The judge must determine whether the case meets the four prerequisites of numerosity, commonality, typicality, and adequacy of representation specified in Rule 23(a), and, in addition, whether the action fits within one of the categories described in Rule 23(b). *Id.* at 483. Although the district judge who presided at the class certification hearing in the instant case stated that plaintiff's motion was governed by Fed.R. Civ.P. 23, it does not appear that he evaluated the motion under the requirements of Rule 23. Instead, the motion appears to have been determined on the basis that plaintiff had not proved by a preponderance of the evidence that defendant practiced racial discrimination. In the judge's bench opinion of February 11, 1981, he stated that a plaintiff may bring a class action "if there has been established by a preponderance of the evidence that there has been actual racial discrimination practiced by the defendant or the employer." Although he indicated that a plaintiff seeking to represent a class need not prove a prima facie case or facts entitling the class to relief, he qualified this statement as follows:

> But that does not excuse the plaintiff for lack of evidence which satisfies the court that there has been at least some racial discrimination in the practices of the defendant.
>
> It would be unfair to this defendant to bring it into court and to require them to defend a class action suit unless the plaintiff has produced sufficient proof upon which the court can hold that the plaintiff has met the burden of proof as required under the laws.

He concluded his conditional denial of the motion for class certification by stating that plaintiff had failed to meet her burden of showing to his satisfaction that the defendant practiced racial discrimination.

Defendant concedes that the district judge's "preponderance of the evidence" language is unfortunate but argues that this was a mere error of terminology. This Court cannot agree. The reference to Rule 23 was nominal. The other statements in the bench opinion clearly indicate that the court did not apply the Rule 23 criteria but instead looked solely to the merits of plain-

tiff's case. The court's order of February 13, 1981, states that class certification was denied for the reasons set forth in the bench opinion of February 11, 1981.

Defendant next urges that even assuming error in the standard applied by the district judge at the class certification hearing, this error was corrected by the trial judge. The statements of the district court in its memorandum opinion of September 13, 1982, however, indicate that that court also evaluated plaintiff's Rule 23 motion according to the merits of the case. The court stated: "The court has reviewed a transcript of the original class certification hearing held February 11, 1981, before [the now deceased district judge]. The court has further heard additional proof from plaintiff seeking class certification and after considering all of the proof, this court refuses to reverse the ruling of [the deceased judge] denying class certification in this matter." Immediately following these statements, the court discusses the sufficiency of plaintiff's proof on discrimination. Nowhere does the court even allude to Rule 23 or its requirements. Significantly, neither the judge who conditionally denied class certification nor the judge who presided at the trial ever made findings relating to plaintiff's failure to satisfy the prerequisites of Rule 23(a) or one of the categories of R. 23(b).

The Supreme Court has made it abundantly clear that the district court must give careful attention to the requirements of Rule 23(a):

> The District Court's error in this case, . . . is the failure to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a).
>
>    \*    \*    \*    \*    \*    \*
>
> [W]e reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.

*Falcon,* 102 S.Ct. at 2372 and 2372–73.

> In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

*Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). Of course, as the court stated in *Falcon,* "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action", *id.* 102 S.Ct. at 2372, and this Court is well aware that in an employment discrimination case the district court must interpret Rule 23 to accommodate the substantive policies of Title VII, *Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 810 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982). Still, it must be determined that the district court here abused its discretion by using an incorrect standard—a sufficiency of the evidence standard—to make the class action determination. Because the decision to deny class certification was not made on the basis of the requirements of Rule 23(a), this Court vacates the decision of the district court to deny class certification and remands for consideration of class certification for discriminatory termination purposes under the proper standard. *See Huff v. N.D. Cass Co.,* 485 F.2d 710, 712 (5th Cir.1973) (*en banc*). For the guidance of the district court, this Court notes that it appears from the record that plaintiff has satisfied the prerequisites of Rule 23(a) with respect to discriminatory termination. This Court leaves the final determination as to satisfaction of Rule 23(a), however, to the careful evaluation of the district court.

The judgment of the district court is vacated and the cause remanded for proceedings not inconsistent with this opinion.

VACATED AND REMANDED.