724 F.2d 1210
 34 Fair Empl.Prac.Cas. 89, 33 Empl. Prac.
Dec. P 34,145
Jessie SYLVESTER, Plaintiff-Appellant,
v.
CALLON ENERGY SERVICES, INC., formerly the Newman Company,
and Michael Newman, Defendants-Appellees.
 No. 83-4353
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 13, 1984.
 
 Patricia F. Dunmore, Southwest MS. Legal Services, Deborah A. McDonald, Lillie P. Blackmon, Natchez, Miss., for plaintiff-appellant.
 R. Brent Bourland, Derek A. Wyatt, Natchez, Miss., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before GEE, POLITZ and JOHNSON, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 Jessie Sylvester, a black male, filed a Title VII discrimination suit in federal district court, alleging that he was discharged from his job because of his racial status. The parties consented to a trial before a United States Magistrate. At the close of all evidence, the magistrate found that Sylvester had carried his initial burden of proving prima facie racial discrimination, but that the defendant employer had successfully rebutted the allegation that the discharge had been racially motivated. The magistrate entered judgment for the employer and Sylvester appealed. Finding the magistrate's fact-findings to lack the specificity required to enable our meaningful appellate review, we vacate the judgment and remand the action for additional findings of fact.
 
 I. BACKGROUND FACTS:
 
 2
 In November 1980 Callon Energy Services, Inc.[1] hired Jessie Sylvester to work as a "floor hand" in the servicing of oil wells. At the time, Sylvester was the small firm's only black employee. Sylvester was an experienced floor hand, and for the first three weeks of his employment his work performance was considered to be above average. Thereafter, however, Sylvester's performance began to decline. In the words of Sylvester's supervisor:
 
 
 3
 On up there for a while then he just got to where he was kind of slowing down and, I don't know, just coming to work, you know, he would get to work and he didn't act like he was too enthused about working. * * * And then he just got to where, you know, average or below, below average.
 
 
 4
 R.3, 152-53.
 
 
 5
 On the morning of November 28--the day after Thanksgiving--Sylvester failed to show up for work. Later in the day Sylvester called in to the office to explain his absence; he followed up the call with a personal visit to the company president. The company president noticed that Sylvester appeared to have been drinking. Sylvester explained that he had been up all night drinking following a domestic quarrel, during which his wife had struck him on the head with a brick. Although company policy provided that an employee's absence without prior approval was grounds for immediate dismissal, the company president gave Sylvester a second chance. Sylvester returned to his active duties as a floor hand.
 
 
 6
 As a member of a "workover rig" crew, Sylvester was required to travel to well sites wherever the firm's services were needed. On two occasions during Sylvester's employment, the crew was required to stay overnight in a distant town. The firm practice was to pay for only two double rooms for the four-man crew. On the first overnight trip, Sylvester shared a room with his caucasian friend Julius Rogers. Rogers later explained that crewmember Bruce Spence had threatened to quit if forced to share a room with a black man. (R.3, 94). Rogers further noted that rig operator and supervisor Danny Martin made sure that Rogers would share Sylvester's room:
 
 
 7
 Well, before we ever left the yard Danny more or less got it straight that I was going to sleep in the room with Jessie, that he wasn't sleeping with no nigger. That's the exact words that were put to me before we ever left town.
 
 
 8
 R.3, 92.
 
 
 9
 Sleeping arrangements once again became a problem on Sylvester's second and final overnight trip. This time, however, Rogers was not a member of the crew. A dispute arose among the white crewmembers as to who would be required to share a room with a black man. After two crewmembers refused, supervising crewmember Danny Martin agreed to share the room with Sylvester. The next day the men completed their job and returned home. When Sylvester reported to work the next morning, January 16, 1981, Martin informed him that he was fired.[2] Martin hired a white male to take Sylvester's place.
 
 
 10
 Convinced that he had been discharged solely because of his race, Sylvester filed a complaint with the EEOC. The Commission declined to bring suit, and Sylvester commenced this action in federal district court, alleging violations of Sec. 706 of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5 (1976), and the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981 (1976). Pursuant to 28 U.S.C. Sec. 636(c) (Supp.1982), the parties agreed to try the case before a United States Magistrate.
 
 
 11
 The trial evidence conflicted sharply. In addition to testimony concerning the workover crew's out-of-town sleeping arrangements, Sylvester adduced evidence of four instances of disparate treatment: first, that he was continually called names such as "Jabbo," "dog," and "bozo," and that the word "nigger" was used in his presence in reference to others; second, that on one occasion he did not receive a free box of work gloves, as did white employees; third, that he was not allowed to sleep in the crew truck while en route to a job, as were white crewmembers; and fourth, that a white employee of the same job title received an hourly wage greater than his own.
 
 
 12
 Callon Energy Services did not refute Sylvester's evidence establishing that the company's employees had refused on racial grounds to share a room with him. The company did adduce controverting evidence on each of Sylvester's additional charges of disparate treatment, moreover offering three reasons for the discharge: excessive absenteeism, inadequate job performance, and drinking on the job. The magistrate entered judgment in favor of the employer, and Sylvester appealed.
 
 II. DISCUSSION:
 
 13
 In a disparate treatment case involving a claim of discriminatory discharge, the plaintiff must first establish a prima facie case of intentional discrimination. The employer must then rebut the presumption of discrimination by producing evidence of a legitimate reason for the plaintiff's discharge. Consistent with the plaintiff's unshifting burden of persuasion, the plaintiff bears the responsibility of proving that the employer's proffered reason is a mere pretext for invidious discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981); Redditt v. Mississippi Extended Care Centers, Inc., 718 F.2d 1381, 1385 (5th Cir.1983). A fact-finding on the issue of the employer's discriminatory intent is subject to the "clearly erroneous" standard of review. Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).
 
 
 14
 In the instant case, the magistrate's bench opinion concluded:
 
 
 15
 It is the opinion of the United States Magistrate that plaintiff made a prima facie case of discrimination upon his showing that he was terminated by the company and that, thereafter, a white employee was hired to replace him; however, the Court finds that the company has articulated a legitimate non-discriminatory reason for his discharge which the plaintiff has wholly failed to prove by a preponderance of the evidence was a mere pretext for actual discrimination.
 
 
 16
 R.3, 217-18; R.2, 8. We construe the magistrate's conclusion as a factual finding that Callon Energy Services did not intentionally discriminate against Jessie Sylvester. We are constrained to review this finding, as well as the "subsidiary" findings of fact, under the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a). See Pullman-Standard v. Swint, 456 U.S. at 287-90, 102 S.Ct. at 1789-91; Williams v. Southwestern Bell Telephone Co., 718 F.2d 715, 718 (5th Cir.1983).
 
 
 17
 The controlling factual inquiry in a Title VII case of this nature is whether the employer intentionally discriminated against the employee, treating him less favorably than others because of his race. See U.S. Postal Service Bd. of Governors v. Aikens, --- U.S. ----, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). To prevail at trial, Sylvester was required only to prove that the reasons proffered by the company to justify the discharge were pretexts. As the Supreme Court noted in Burdine:
 
 
 18
 The plaintiff retains the burden of persuasion. [H]e now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [h]e has been the victim of intentional discrimination. [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.
 
 
 19
 450 U.S. at 256, 101 S.Ct. at 1095. Thus when the ultimate question of discrimination vel non turns on the employer's intent, the fact-finder acquires an affirmative obligation to "decide which party's explanation of the employer's motivation it believes." U.S. Postal Service Bd. of Governors v. Aikens, 103 S.Ct. at 1482.
 
 
 20
 Sylvester contends that the company's three proffered reasons for the discharge are mere pretexts, unworthy of credence, and that the magistrate clearly erred in ignoring the evidence that the racially-charged bedroom-sharing incidents precipitated the dismissal. In an effort to understand the magistrate's resolution of the conflicting evidence concerning the company's motive for discharging Sylvester, we turn to the magistrate's findings of fact.
 
 
 21
 We begin by noting that, of the three reasons proffered in support of Sylvester's dismissal, the magistrate found only one persuasive. The magistrate's bare factual recitation that "the company has articulated a legitimate non-discriminatory reason for [the] discharge," however, lends us no guidance as to which one of the three asserted bases for the discharge was ultimately persuasive. An examination of other portions of the magistrate's opinion assists in the elimination of two of the company's reasons. First, as regards Sylvester's allegedly inferior work performance, the opinion merely summarized the relevant testimony without drawing from it any fact-finding: "It was the testimony of the plaintiff's supervisor, Martin, that the plaintiff was an above average employee for the first few weeks of his employment, but thereafter his performance steadily declined." R.3, 211-12; R.2, 3. As for the second, Sylvester's alleged absenteeism, the magistrate once again simply summarized the evidence without drawing from it any factual conclusion:[3]
 
 
 22
 The company records introduced at trial indicate that plaintiff was absent from work on December 9, 1980 and portions of two additional days that same week. Plaintiff vehemently denied that he was absent those days. In an effort to ascertain exactly what occurred, the Court sought to obtain information from other company records to see if the plaintiff was working on another rig on those days as he claimed; however, the Court was blocked in its inquiry by the plaintiff's attorneys' objection to this procedure.
 
 
 23
 R.3, 212-13; R.2, 4.
 
 
 24
 It is therefore quite clear that the magistrate considered neither absenteeism nor unsatisfactory job performance to be a legally-sufficient reason for the dismissal. As for the third proffered reason, however, the company did offer some circumstantial evidence that Sylvester may have consumed intoxicating liquor while on the job or while on the way to work. A careful reading of the magistrate's opinion reveals that the magistrate placed great importance on the evidence of Sylvester's job-related drinking:
 
 
 25
 On January 15, 1981, the plaintiff was fired after Martin found an empty Vodka bottle belonging to Sylvester in the truck used by the crew in servicing the equipment of the customers of the company. Testimony is conflicting as to whether the plaintiff was drinking at the job site or in the company truck on the way to the job site. In view of the fact that no employee was allowed to work on a rig after having taken any intoxicating beverages whatsoever, it is unnecessary to resolve this conflict in the testimony.
 
 
 26
 R.3, 213; R.2, 4.
 
 
 27
 Upon examination of the record evidence, we conclude that this finding is plagued by considerable defects. First, we note in passing that all testimony indicated that Sylvester and the crew returned from the overnight trip on January 15, and that Sylvester was fired not on that day, but on the very next day. This discrepancy may not by itself impugn the fact-finding. Even were we to excuse this discrepancy as immaterial, nonetheless the fact-finding would remain infected by its own incurable vagueness and sullied by its own unjustifiable innuendo. An example of the finding's open flaw is displayed in the recitation of facts contained in the appellee's own brief: "Jessie Sylvester ... was discharged January 16, 1981, one day after his rig supervisor [Martin] found evidence that Jessie had been drinking either during work or on the way to the job."[4] Appellee's brief at 4. The record simply does not support a conclusion that Martin discovered an empty vodka bottle in the truck and, imputing ownership to Sylvester, fired him on the next day. There is simply no record evidence of when Martin found the bottle, although that missing component would seem vital to the magistrate's assessment of the credibility of the proffered reason. Further, on the crucial issue of Martin's motive in firing Sylvester, there is absolutely no evidence that Martin's discovery of the vodka bottle precipitated the discharge, and little if any indication that the empty bottle played even a remote role in Martin's firing decision. Indeed, there is a paucity of specific evidence, and surely no fact-finding, establishing that Martin actually knew that Sylvester had engaged in on-the-job or before-the-job drinking. And, any inference to the contrary is expressly rebutted by Martin's own statements that "there never has been any smoke on the job that I knowed of, or drinking either," and that he never saw Sylvester drinking on the job.[5] When viewed in light of the record evidence, therefore, this key fact-finding is simply so ambiguous and misleading that it fails to assist our review of the employer's motivation, the essential component in the ultimate question of the employer's discrimination vel non. Accordingly, we find that the magistrate's opinion fails to conform to the requirements of Federal Rule of Civil Procedure 52(a). See Redditt v. Mississippi Extended Care Centers, Inc., 718 F.2d at 1386; Corley v. Jackson Police Dept., 566 F.2d 994, 1000 n. 8 (5th Cir.1978).
 
 
 28
 In the instant case both parties offered evidence on the crucial issue of pretext. The magistrate declined to enter any meaningful fact-findings on the incidents surrounding the workover crew's hotel room arrangement, which Sylvester contended had precipitated his discharge.[6] The magistrate moreover entered a misleading and inaccurate finding on the company's central justification for the discharge, and did not consider the two remaining proffered reasons to be sufficient (or perhaps necessary) to support a judgment in favor of Callon Energy Services. Therefore, we cannot accurately determine whether the magistrate has properly satisfied his obligation to "decide which party's explanation of the employer's motivation [he] believe[d]," see Aikens, 103 S.Ct. at 1482, and which (if any) proffered explanation is worthy of credence, see Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. Once the magistrate complies with Federal Rule of Civil Procedure 52(a) and issues adequate fact-findings, an appeal would call for their review under the "clearly erroneous" standard. At the present time, however, the conflict in the testimony remains acute, and on the basis of the few established facts, we are powerless to affirm.[7]
 
 As we recently noted:
 
 29
 In reviewing the district court's finding of no discrimination under the clearly erroneous standard, this Court cannot be left to second guess the factual basis for the district court's conclusion. This Court cannot determine whether the district court's finding that plaintiff failed to demonstrate pretext was clearly erroneous when the district court's finding is not expressed with sufficient particularity. It is not the function of this Court to make credibility choices and findings of fact. We are therefore left with no choice but to vacate the judgment of the district court for failure to comply with Fed.R.Civ.P. 52(a) and remand for findings of fact which indicate the factual basis for the district court's conclusion on the issue of pretext.
 
 
 30
 Redditt v. Mississippi Extended Care Center, 718 F.2d at 1386. In this instance, we are likewise constrained to vacate the judgment and to remand for such additional proceedings, if any, as the district court or magistrate shall deem necessary to enable findings of fact establishing the factual basis for the conclusion on the issue of pretext. In this regard we advert to the fact-finder's express power "to change, modify, or reassert its ultimate conclusion," unimpugned, of course, by clear error. Id. at 1387. While we here acknowledge the fact-finder's broad powers to resolve conflicting evidence, we recognize that the fact-finder may very well wish to consider the substantial evidence underlying Sylvester's two paramount contentions: that he was expected to perform his job in an atmosphere charged with racial discrimination, and that the verifiable motive for his dismissal rested on the invidious grounds of race. Our ultimate review of this matter--if necessitated--would certainly profit from the resolution of these difficult questions of fact, upon which this dispute continues to thrive. At this time, however, unaided by any meaningful distillation of the controlling facts, we express no further view on the merits of these contentions.
 
 
 31
 The judgment is VACATED, and the cause is REMANDED to the United States District Court for the Southern District of Mississippi.
 
 
 
 [1]
 Sylvester was hired and fired by the Newman Oil Co., Inc. Prior to trial, Newman Oil Co., Inc. became Callon Energy Services, Inc
 
 
 [2]
 As the rig operator, Martin had the authority to fire crewmembers and hire their replacements. These employment decisions were subject to review by the company president
 
 
 [3]
 The court furthermore took note of Sylvester's absence from work in the wake of his Thanksgiving-day melee. The magistrate expressly excluded this incident as a basis for the dismissal, however, in noting that "plaintiff was given a second chance to prove himself." R.3, 212; R.2, 4
 
 
 [4]
 In fact, Martin's own testimony strongly suggests that Sylvester's alleged "drinking on the job" was wholly unrelated to his discharge:
 [COUNSEL] Q. Have you ever smoked marijuana in the truck while you were working?
 [MARTIN] A. Not working, I have smoked it but I have never smoked on the job and there has never been any smoke on the job that I knowed of, or drinking either.
 R.3, 76.
 * * *
 [COUNSEL] Q. Have you ever seen Jessie drinking on the job?
 [MARTIN] A. No. I found a bottle, though, that belonged to him.
 R.3, 77.
 * * *
 [MARTIN] A. All right, I found a bottle behind the seat that I seen Jessie buy the day before.
 THE COURT: Okay.
 MR. BOURLAND:
 Q. When did you see him buy it the day before?
 A. That evening when I carried him home.
 Q. On the way home?
 A. Yes, sir.
 Q. After you finished working?
 A. (Nodding affirmatively.)
 Q. And you saw him buy that bottle?
 A. Yes.
 Q. And then you found it empty the next day?
 A. Behind the seat.
 Q. What kind of bottle was it?
 A. A vodka bottle.
 R.3, 156-57.
 * * *
 MS. DUNMORE:
 Q. You testified that you saw Jessie Sylvester buy a bottle of liquor one night?
 [MARTIN] A. Yes.
 Q. What time was it when he bought that bottle of liquor?
 A. About 7 o'clock.
 Q. 7 o'clock p.m., right?
 A. Yes.
 Q. Do you remember what day it was, what day of the week it was?
 A. No, I sure don't.
 Q. I guess you were taking him home is that how you saw him buy it?
 A. Yes.
 Q. He bought the bottle of liquor, then you took him home?
 A. Yeah.
 Q. Then you came to work the next day?
 A. Right.
 Q. And sometime that day you found an empty bottle?
 A. Yeah.
 Q. And you assumed that that bottle belonged to Jessie Sylvester, didn't you?
 R.3, 167 (emphasis added). At no time did Martin--who did the firing--explain how the discovery of an empty vodka bottle was linked to his decision to discharge Sylvester. Sylvester admitted that while on the way to a job one day he shared a half-pint of vodka with Rogers. Rogers denied it. There is no evidence that anyone saw Sylvester drinking.
 
 
 [5]
 See note 4, supra
 
 
 [6]
 The magistrate's opinion merely stated: "There was testimony to the effect that a crew member voiced an objection to staying with plaintiff on overnight trips, but on the two trips he took while employed with Newman this plaintiff roomed with Rogers once and with Martin once." R.3, 216; R.2, 6-7
 
 
 [7]
 We do not mean to suggest that Callon Energy Services is charged with the burden or proving that it acted without a discriminatory motive in discharging Sylvester. Neither, of course, do we imply that the company in this case must adduce evidence that the discharge of Sylvester was in fact precipitated by Martin's discovery of the liquor bottle. As we recited above, to rebut Sylvester's prima facie case, the company needed only to adduce evidence sufficient to raise "a genuine issue of fact as to whether it discriminated against the plaintiff." Tex. Dept. of Community Affairs v. Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094-95; Redditt v. Mississippi Extended Care Centers, Inc., 718 F.2d at 1385; see Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). In adducing some evidence on the issues of Sylvester's absenteeism, his work performance, and his drinking practices, the company clearly discharged that slight burden. Yet it remains the province of this Court to review the lower court's findings of fact, subject to the strictures of Federal Rule of Civil Procedure 52(a). Here, the magistrate's failure to enter adequate findings of fact on the issue of whether the articulated reasons are pretexts has frustrated our attempt to discharge our responsibility to review the trial evidence under the light of Sylvester's contention that each reason is "unworthy of credence." See, e.g., Redditt v. Mississippi Extended Care Centers, Inc., 718 F.2d at 1386; Corley v. Jackson Police Dept., 566 F.2d 994, 1000 n. 8 (5th Cir.1978). Cf. Avant v. South Central Bell Telephone Co., 716 F.2d 1083, 1087 (5th Cir.1983) (holding that the record broadly supported the district court's decision on the question of which party's explanation of the employer's motivation it should believe)