**Jessie SYLVESTER, Plaintiff-Appellant,**

**v.**

**CALLON ENERGY SERVICES, INC., et al., Defendants-Appellees.**

**No. 85–4127.**

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1986.

Sanders, Blackmon & Dunmore, Patricia F. Dunmore, Lillie P. Blackmon, Deborah

A. McDonald, Natchez, Miss., for plaintiff-appellant.

Derek A. Wyatt, Hattiesburg, Miss., for defendants-appellees.

Before GOLDBERG, RANDALL, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Jessie Sylvester, a black male, appeals from the judgment of the magistrate[1] entered in favor of Callon Energy Services, Inc.,[2] in Sylvester's race discrimination action brought pursuant to Title VII, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981. The magistrate held that Sylvester failed to prove by a preponderance of the evidence that the reasons articulated for Sylvester's discharge were pretextual. This Court has carefully reviewed the record in this case, and this Court's review has inescapably led it to the conclusion that the magistrate's finding that Sylvester was not a victim of race discrimination is clearly erroneous. Therefore, the judgment of the magistrate is reversed and this Court renders judgment in favor of Sylvester on his claim of race discrimination and remands this case solely for a determination of the appropriate relief to which Sylvester is entitled.

## I. FACTS AND PROCEDURAL HISTORY

This Court previously remanded this case to the magistrate for further factual findings in accordance with Fed.R.Civ.P. 52(a). Sylvester v. Callon Energy Services, Inc., 724 F.2d 1210 (5th Cir.1984). We take our summary of the pertinent facts largely from that earlier opinion, although certain modifications have been made in light of developments on remand.

In November of 1980, Callon Energy Services, Inc. (Callon Energy) employed Jessie Sylvester as a "floor hand" to work on drilling rigs used to service oil wells. At the time Sylvester was hired, Sylvester was the small firm's only black employee.

Sylvester's position as a floor hand and member of a "workover rig" crew required Sylvester to travel to well sites wherever the company's services were needed. Twice during Sylvester's employment with Callon energy, Sylvester's crew stayed overnight in a distant town. Because Callon Energy's practice was to pay for only two double motel rooms for the four-man crew, Sylvester was required to share a room with another crew member. On the first trip, Sylvester shared a room with Julius Rogers, the crew member with whom Sylvester was friendliest.

Rogers testified on behalf of Sylvester at trial, and in his testimony Rogers explained how the crew reached the decision that Rogers would share a room with Sylvester. Rogers testified that Bruce Spence, the other floor hand, had threatened to quit if Spence was forced to share a room with a black man. Rogers further testified that the rig operator and Callon Energy Supervisor, Danny Martin, arranged for Rogers to share a room with Sylvester. Rogers stated:

> Well, before we ever left the yard Danny more or less got it straight that I was going to sleep in the room with Jessie, that he wasn't sleeping with no nigger. That's the exact words that were put to me before we ever left town.

Record Vol. II at 92.

On the second trip out of town, sleeping arrangements again became an issue. By that time, Rogers had left Callon Energy. A dispute arose among the three white crew members as to whom would be required to room with Sylvester. After two crew members refused to share a room

---

1. This case was tried before a magistrate by the consent of the parties. See Record Vol. I at 23.

2. Sylvester was employed by Newman Oil Co., Inc. Prior to trial, Newman Oil Co. was merged into Callon Energy Services, Inc. Callon Energy Services, Inc. assumed all the liabilities of Newman Oil Co., Inc. Record Vol. II at 7.

with a black man, Martin, the supervisor, agreed to share the room with Sylvester. The job was completed the next day and the crew returned home. Sylvester reported to work the following morning, January 16, 1981, as usual, but Martin informed Sylvester that he was fired. Sylvester was replaced by a white male.

Convinced that he had been discharged solely because of his race, Sylvester filed a complaint with the Equal Employment Opportunity Commission, which declined to sue and issued a right-to-sue notice to Sylvester. Sylvester then initiated this Title VII action, 42 U.S.C. § 2000e–5, as well as an action under 42 U.S.C. § 1981.

At trial, Sylvester adduced the above-referenced testimony concerning out-of-town trips. Sylvester also adduced evidence of four other alleged instances of disparate treatment which are not of central importance in this appeal.[3] Callon Energy did not refute Sylvester's evidence concerning its employees' refusals to share a motel room with Sylvester. The company did, however, adduce evidence on each of the other four instances of alleged disparate treatment. The company also articulated three reasons for Sylvester's termination: excessive absenteeism, inadequate job performance, and drinking on the job.

The magistrate entered judgment in favor of Callon Energy, stating that "the company has articulated a legitimate nondiscriminatory reason for his discharge which the plaintiff has wholly failed to prove by a preponderance of the evidence was a mere pretext for actual discrimination." Record Vol. II at 218 (emphasis

added). Sylvester appealed to this Court. This Court vacated the judgment of the magistrate and remanded the case because "the magistrate's fact-findings ... [lacked] the specificity required to enable ... meaningful appellate review...." 724 F.2d at 1211.

Specifically, this Court concluded that the articulated reason for Sylvester's discharge upon which the magistrate relied was Callon Energy's contention that Sylvester consumed intoxicating liquor while on the job or while on the way to work. In the initial appeal, Callon Energy asserted to this Court that Sylvester "was discharged ... *one day after* his rig supervisor [Martin] found evidence that Jessie had been drinking either during work or on the way to the job." 724 F.2d at 1214 (emphasis added, brackets in original). This Court's own careful review of the record indicated that the record was devoid of any evidence of *when* Martin found a vodka bottle allegedly belonging to Sylvester. 724 F.2d at 1215.

This Court considered the findings related to the alleged drinking incident crucial to the resolution of the case. Consequently, this Court vacated the judgment and remanded the case for further findings on that specific issue. Moreover, this Court stressed that the magistrate did not properly satisfy his obligation to " 'decide which party's explanation of the employer's motivation [he] believe[d]....' " 724 F.2d at 1216 (brackets in original) (citing *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)).[4]

---

3. Sylvester asserted the following: (1) Sylvester was continually called such names as "jabbo," "dog" and "bozo," and the term "nigger" was used in his presence in reference to others and out of his presence in reference to him, (2) Sylvester did not receive a box of free work gloves as did the white employees on his crew, (3) Sylvester was not allowed to sleep in the crew truck while en route to a job as were white crew members, and (4) a white employee with the same job title, "floor hand," received an hourly wage greater than that wage received by Sylvester.

4. In addition, this Court noted that the magistrate failed to enter any "meaningful" findings on the incidents concerning motel room arrangements which Sylvester contended prompted his discharge. Finally, this Court noted the absence of findings on Sylvester's second claim, which was that he was required to perform his job in an atmosphere charged with racial discrimination in violation of Title VII. *See Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir.1982); *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). In the present appeal, this Court does not need to reach Sylves-

On remand, the magistrate authored a second opinion. Unfortunately, in most respects the second opinion is no more illuminating than the first. However, the magistrate did specifically find that Sylvester's job performance was adequate for the company's purposes. Moreover, the magistrate found, as this Court's previous review of the record indicated, that "[t]he record is unclear as to when [the] drinking incident occurred and how it led to Sylvester's discharge." Record Vol. I at 36–37. Nevertheless, the magistrate ultimately concluded that "[m]ost of the complaints of the company were admitted by Sylvester, and any one would, in the opinion of the Court, justify his termination. Plaintiff failed to meet his burden of proving that these reasons were mere pretexts for discrimination." Record Vol. I at 39.

Although the second opinion fails to clear up many of the ambiguities present in the first opinion, this Court holds that a second remand for further fact finding would be fruitless. Thus, this Court construes the magistrate's opinion to hold that Sylvester was not the victim of race discrimination and that the magistrate believed Callon Energy's proffered reasons for Sylvester's discharge. We further conclude that these findings are clearly erroneous in light of the evidence presented at trial.

## II. DISCUSSION

In *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981), the Supreme Court described the order of presentation in a disparate treatment case involving a claim of discriminatory discharge. First, the plaintiff is required to make out a prima facie case of intentional discrimination. The employer then must rebut the prima facie case by articulating a legitimate nondiscriminatory reason for the plaintiff's discharge. Consistent with the plaintiff's unshifting burden of persuasion, the plaintiff must then bear the burden of proving that the employer's proffered reason is merely a pretext for discrimination. *See Aikens*, 460 U.S. at 714, 103 S.Ct. at 1481–82.[5]

■ As stated in *Burdine*, the plaintiff retains the ultimate burden of persuading the court that the defendant discriminated against the plaintiff on the basis of race. The plaintiff may succeed in this burden " 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1482 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). In *Aikens*, the Court stated, however, that "the district court must decide which party's explanation of the employer's motivation it believes." *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1482.

This Court concludes that the magistrate's finding of no discrimination is clearly erroneous. The Supreme Court has offered two constructions of the Rule 52(a) clearly erroneous standard that are helpful to the disposition of this appeal. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746 (1948). Recently, the Supreme Court stated that if the district court's account of the evidence is plausible in light of the entire record, then a court of appeals may not reverse the finding even though it is con-

---

ter's alternate theory of recovery given this Court's disposition of the disparate treatment claim.

**5.** In the instant case, the magistrate concluded that Sylvester presented a prima facie case of discrimination. That finding is not challenged on appeal. Likewise, the magistrate concluded that Callon Energy Services articulated three

legitimate nondiscriminatory reasons for Sylvester's termination. Although Sylvester challenges this conclusion, the company's showing was sufficient to raise "a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55; 101 S.Ct. at 1094.

vinced that it would have reached a different result if it had been sitting as the trier of fact. "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). This Court recognizes that the clearly erroneous standard is a difficult standard to meet. Yet this Court is convinced that the entire record does not support two permissible views of the evidence and that a mistake has been committed in this case. This conclusion follows because there are only three possible reasons for Sylvester's discharge according to the magistrate's findings, and none of those three reasons are supported by the record.

First, Callon Energy stated that Sylvester was discharged for poor job performance. The testimony was overwhelming at trial that Sylvester's performance began above average, and although Sylvester may have had his bad days, his performance remained adequate. The only contrary testimony came from Danny Martin, the crew supervisor, who testified that after a period of time Sylvester "didn't act like he was too enthused about working.... And then he just got to where, you know, average or below, below average." Record Vol. II at 152–53. In any event, the magistrate specifically found that Sylvester's performance remained adequate for company purposes. Record Vol. I at 37. Given this subsidiary finding of fact by the magistrate, which is amply supported by the record, this Court must conclude that Sylvester demonstrated that this proffered explanation was pretextual.

Second, Callon Energy asserted that Sylvester was terminated for drinking on the job. The company president testified that it was company policy to immediately terminate any employee for consuming intoxicating liquor on the job and that the policy was to be applied without exception. The magistrate found that Sylvester admitted drinking vodka in the company truck on one occasion while being driven to the worksite. Martin, the supervisor, found an empty bottle in the truck and believed that it was identical to one that Sylvester purchased on the way home from work the night before. Martin knew Sylvester purchased the vodka because Martin gave Sylvester a ride home that evening. Martin did not actually see Sylvester drink while on the way to the job site the next day, nor did any other supervisory official.

While it is unclear when Martin found the bottle, it is readily apparent that Martin found it some substantial time *prior* to Sylvester's discharge; at least prior to the last trip out of town, which Sylvester contends actually precipitated his termination. Without a doubt, the company policy, which required immediate termination and which admitted to no exceptions, was not applied at the time Martin discovered the vodka bottle. This Court cannot know why prompt action was not taken. Perhaps no action was taken because Martin could not be sure the bottle was Sylvester's since Martin testified that he never saw *nor knew* of any drinking on the job. Perhaps the bottle was not connected to Sylvester until after the initiation of this case and Sylvester's admission that on one occasion he consumed alcohol on the way to the job site.

Whatever the true facts concerning the bottle, the magistrate was unable to make any more specific findings on this point. The magistrate only found that "[t]he record [was] unclear as to when this drinking incident occurred and how it led to Sylvester's discharge." Record Vol. I at 36–37. It is quite clear to this Court that the magistrate did not find that Sylvester was discharged for drinking on the job. The proper inquiry is directed to what actually prompted Sylvester's termination and not what might have been a proper reason if only the supervisor knew of the wrongful conduct.

Callon Energy next contends that Sylvester was terminated for excessive absenteeism. It is undisputed that Sylvester missed one day of work, the day following Thanksgiving. Aware that his absence might cost

him his job, Sylvester personally visited the president of the company, and he was granted a second chance. The record is in conflict over whether Sylvester missed another full day, Tuesday, December 9, 1980, and two other part days in December. Sylvester contends that he was on another rig the day the company records show him absent.

In court, the following colloquy developed:

The Court: Maybe I can solve that right now. Mr. Sylvester, you are still under oath. Stand up, please.

Mr. Sylvester: Yes, sir.

The Court: Did you work on any other rigs or in the yard during the week ending December the 14th?

Mr. Sylvester: I can say, well—it was in December. I know I worked on one other rig I know. I was late getting there one day and I went to work on another rig for Bobby.

The Court: Named who?

Mr. Sylvester: Bobby.

The Court: Does that strike a bell with you, Ms. Lott [the company recordkeeper], is there a rig operated by any supervisor named Bobby?

Ms. Lott: Well, we had a Bobby Scott but I am not sure if he had been with us back that long.

Mr. Bourland [Callon's Counsel]: Your Honor, if I might interject, *he remembers the same think that Jessie Sylvester does. I think he worked on another rig that week.*

Record Vol. II at 143–44 (emphasis added).

The company records demonstrate that Sylvester worked forty-five hours on the rig supervised by Danny Martin the week

in question. Plaintiff's Exhibit 4. Martin's records show that Sylvester did not work on Martin's rig on Tuesday, December 9, 1980. *Id.* Sylvester, however, was paid for fifty-two hours of work that week. Plaintiff's Exhibit 3. Callon's counsel conceded that the supervisor of another rig remembered using Sylvester's services for one day that week. While it is not completely without doubt that Tuesday, December 9, 1980, the day at issue in this case, is the day that Sylvester was on Bobby's rig, it certainly seems to be the most logical conclusion that the documents support.[6]

Even accepting, and this Court does not, that Sylvester actually missed work on December 9, 1980, as well as two other part days that week, the absences occurred well over a full month before Sylvester's termination. Nevertheless, the company president testified that a missed day would lead to immediate termination, although an informal company policy allowed one second chance. Sylvester had been given that second chance on November 28, the day after Thanksgiving. Again, the policy of immediate termination was not applied to Sylvester. Although the magistrate made no specific finding on how these alleged, and far from supported absences, led to Sylvester's termination, this Court must conclude that there was no connection between Sylvester's alleged absences and Sylvester's discharge.

■ In the instant case, Sylvester has demonstrated, by uncontradicted evidence, that he was terminated promptly following the sleeping arrangement incident. Callon Energy's three proffered reasons simply lack support in reason or support in the record. One is disproven as a matter of

---

**6.** The Company recordkeeper testified that the company must have mistakenly paid Sylvester for seven hours that week which Sylvester did not in fact work. The magistrate, in an effort to clear up the discrepancy, ordered the recordkeeper to place a telephone call to Callon Energy's office to determine whether more information was available from the company records. Sylvester's counsel understandably objected to admission of such "documentary" evidence through a hearsay telephone conversation, particularly since all records pertaining to Sylvester were to have been presented to the EEOC and Sylvester's counsel. The magistrate sustained Sylvester's counsel's objection to this method of proof, although the magistrate was clearly unhappy with the objection. We note that Sylvester's counsel's objection was proper in all respects and should not have been a basis for the magistrate's ruling against Sylvester on the merits of the case.

fact, and the other two were never connected in time to Sylvester's discharge, contrary to express company policy which required immediate termination in both instances. This Court must conclude that Sylvester demonstrated, by the overwhelming weight of the evidence, that he was a victim of race discrimination. The evidence simply does not support the company's position and the magistrate's finding of no discrimination must be held to be clearly erroneous.

Consequently, the judgment of the magistrate is reversed, and judgment is rendered in favor of Sylvester on his claim of discrimination. The case is remanded solely for a determination of the proper relief to which Sylvester is entitled under Title VII and section 1981.

### CONCLUSION

For the foregoing reasons, the judgment of the magistrate is REVERSED, judgment is RENDERED IN PART, and the case is REMANDED for proceedings consistent with this opinion.

REVERSED, RENDERED IN PART, AND REMANDED