716 F.2d 1083
 32 Fair Empl.Prac.Cas. 1853,
32 Empl. Prac. Dec. P 33,851
William AVANT, individually, and on behalf of all persons
similarly situated, Plaintiffs-Appellants,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant-Appellee.
 No. 82-4373
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 11, 1983.
 Firnist J. Alexander, Jr., Jackson, Miss., for plaintiffs-appellants.
 Paul O. Miller, III, Jackson, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before BROWN, REAVLEY and TATE, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 The District Court dismissed plaintiff's individual and class action suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Sec. 2000e et seq., as amended, and the Civil Rights Act of 1866, 42 U.S.C.A. Sec. 1981, and denied his motion for certification of the class. Because, as will be shown, that Court's action was correct, we affirm.
 
 
 2
 On January 2, 1973, the plaintiff, William W. Avant, applied with South Central Bell Telephone Company (Bell) for the position of telephone lineman in the Jackson, Mississippi area.
 
 
 3
 At that time, Bell had a two-step employment process. After a preliminary interview and some questioning, an applicant would be required to take a general aptitude test, fill out a formal application, and go through an in-depth interview. If these were successfully completed, the applicant would then have a physical examination and, for certain positions requiring special insurance, Bell's Security Department would conduct a background investigation of the applicant.[1] The lineman position required such a security check,[2] and Bell never hired a lineman applicant who received an unfavorable security report.[3] Pursuant to a Consent Decree entered into with the United States Government, Bell hired a large number of black lineman applicants.[4]
 
 
 4
 Avant, a black male, successfully negotiated the preliminary interview and questioning and passed the general aptitude test. However, in filling out his formal application for employment, he answered "yes" to whether he had "ever been convicted of any law violation including traffic citations (excluding parking tickets)?" but detailed that only as a "Speeding Violation 68-71 Illinois" and "Running Red Light 72 Miss." Avant saw and signed the statement on the application that stated "I [the applicant] understand the Company [Bell] reserves the right to verify all information on this application and that any false statements or failures to disclose information may be sufficient to disqualify me for employment, or, if employed, may result in my dismissal."
 
 
 5
 In fact, as the District Court found, Avant had been convicted of petty larceny the previous fall. On September 17, 1972, he had bought gasoline at a Rankin County, Mississippi service station and presented his paycheck to pay for the gas. He had been drinking and gambling. There was some confusion in cashing the paycheck, and Avant apparently took the check back with him along with his change. The Jackson police subsequently arrested him and turned him over to the Rankin County Sheriff's Department. The following day, September 18, 1972, Avant put up a $200 bond for his release. Later that day, he was tried for petty larceny and fined $60 (of which $50 was suspended due to the service station owner's plea for mercy). Avant knowingly omitted this conviction from his formal application for employment.[5]
 
 
 6
 Nonetheless, Avant took his physical examination and was certified as qualified for the position of lineman, subject to his background investigation. The security report, which as the then Mississippi Employment Manager for Bell testified only lists convictions in detailing an applicant's "criminal" record, came back unfavorable. It showed that Avant had been arrested on September 17, 1972, been charged with petty larceny, put up a $200 cash bond, and been released September 18, 1972. The report concluded that "[i]f this applicant is hired, please refer to Executive Instructions 3, Section 4, which covers Blanket Fidelity Bond requirements." Note 1, supra. Bell informed Avant by letter that his application had been declined, and filled the lineman position with another black male applicant.
 
 
 7
 Avant filed a charge of employment discrimination with the Jackson District Office of the Equal Employment Opportunity Commission (EEOC) four months later. After EEOC conciliation efforts had failed, Avant filed suit in 1981 in federal district court.
 
 
 8
 Trial Judge Nixon, after a short non-jury trial, dismissed Avant's individual claims of discriminatory treatment and impact and declined to certify his class claims. Specifically, in a careful and detailed opinion delivered from the bench, the Court held that under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Avant had failed to prove a prima facie case of discriminatory treatment, because he was not "qualified" for the lineman position[6] and because he had not shown that a non-minority applicant had filled the position he was seeking; Bell had articulated a legitimate non-discriminatory reason for refusing to hire Avant--the Fidelity Bond coverage requirements and his falsifying his employment application regarding the petty larceny conviction; and Avant failed to prove that Bell's business reason was a "mere pretext" for discrimination. As to discriminatory impact, the Court again found that Avant had failed to establish a prima facie case, because he offered no evidence that more black applicants than white were excluded by Bell's refusal to hire applicants who had a previous conviction of dishonesty or fraud for positions of trust, and Bell had shown and proved a legitimate business need behind its policy, specifically, the limited coverage of the Fidelity Bond. The Court also stated that Avant's Sec. 1981 suit was barred by Miss.Code Ann. Sec. 15-1-49 (1972), a six-year statute of limitations.[7] Finally, the Court denied Avant's motion for class certification because he had failed to bring the motion in a timely manner under the local rules of the Court, had failed to show "numerosity," and, in failing to make any motion for certification or seek or offer any evidence to support such certification, had not fairly and adequately protected the interests of the class.
 
 The Disparate Treatment Claim
 
 9
 Avant asserts that the Trial Judge misconstrued the nature of a plaintiff's burden of establishing a prima facie case of racial discrimination. We point out, though, that while the Court ultimately found that Avant had shown no prima facie discrimination, it declined to dismiss his claim on that ground at the close of his case and made Bell present all of its evidence.
 
 
 10
 Thus, this case was "fully tried on the merits," and this Court, like the Supreme Court, must stress that "by framing this issue in these terms," Avant has "unnecessarily evaded the ultimate question of discrimination vel non." United States Postal Service Board of Governors v. Aikens, --- U.S. ----, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (footnote omitted). Logically, since both Avant and Bell had presented their case,
 
 
 11
 [t]he district court was ... in a position to decide the ultimate factual issue in the case.
 
 
 12
 The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." [citation omitted] In other words, is "the employer ... treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.' " [citations omitted] ... Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.
 
 
 13
 Id. at ----, 103 S.Ct. at 1482, 75 L.Ed.2d at 411.
 
 
 14
 Here, there can be no doubt that the Trial Judge "decide[d] which party's explanation of the employer's [Bell's] motivation it believes." Id. Further, this decision--that Bell had not treated Avant in a discriminatory manner by not hiring him--like any other factual finding of a district court, will stand unless clearly erroneous under F.R.Civ.P. 52(a). Pullman-Standard v. Swint, 456 U.S. 273, 289-90, 102 S.Ct. 1781, 1790-91, 72 L.Ed.2d 66, 80-81 (1982). Our review must leave this Court with a "definite and firm conviction that a mistake has been committed," United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746 (1948), before we will overturn the Trial Judge's decision. With these standards in mind and after reviewing a record which as shown broadly supports that decision, we find no such mistake.
 
 The Disparate Impact Claim
 
 15
 At trial Avant sought to prove, through nation-wide statistics showing that blacks are arrested more frequently than whites, that Bell's policy of rejecting lineman applicants who had previously been arrested and had put up a bond for their release excluded, though unintentionally, more black applicants than whites.[8] His argument misses the point.
 
 
 16
 Here, the Trial Court found that Bell had refused to hire Avant because of his past undisclosed conviction for petty larceny. It correctly pointed out that Avant could shoulder his burden of proof on circumstantial (i.e., statistical) evidence, see Teamsters v. United States, 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396, 417 (1977), and that he need not show expressly an intent to discriminate. Id. at 335-36, n. 15, 97 S.Ct. at 1854-55 n. 15, 52 L.Ed.2d at 415-16. The Court simply could not find any proof that such "facially neutral standards ... select applicants for hire in a significantly discriminatory pattern," Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786, 797 (1977), from Avant's overly-broad arrest statistics.
 
 
 17
 We find no mistake in the Trial Court's factual finding that Bell had refused to hire Avant because of his petty larceny conviction. The Trial Judge could properly credit the Bell Employment Manager's testimony regarding the security reports. On that basis, we further find no error in the Court's ultimate finding of no discriminatory impact. Equal Employment Opportunity Commission v. Kimbrough Investment Co., 703 F.2d 98, 100 (5th Cir.1983). The evidence adequately substantiates the District Court's finding that Bell's policy was responsive to a legitimate business need and that it did not result in a disparate impact on black lineman applicants in contravention of Title VII.
 
 
 18
 The Class Claims, Etc.
 
 
 19
 Avant appeals to have his class claims reconsidered by the District Court should this Court find merit in his disparate impact claims. Because we do not find such merit, we decline to remand on this issue.
 
 
 20
 In sum, after a careful scrutiny of Avant's appeal we arrive at only one conclusion. Bell's refusal to hire Avant was untainted by intended or inadvertant discrimination on the basis of Avant's race. The District Court's opinion was correct.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Bell had blanket insurance coverage--an Employees' Fidelity Bond--"against loss of money, securities, revenues and other property as a result of larceny, theft, embezzlement, forgery, misappropriation or other fraudulent or dishonest act or acts committed by employees." The coverage extended to all employees in jobs that dealt with the handling of money, Bell's material or property, or certain sensitive information, except where Bell had "knowledge of a prior fraudulent or dishonest act on the part of an employee" and such employee had not been individually covered
 
 
 [2]
 Linemen, who install and repair telephone lines, are responsible for thousands of dollars in Bell equipment and materials, including, as testified to at trial, "individual hand tools amounting to two or three hundred dollars, a truck that could amount to $75,000, group tools that the truck has associated with it that are ... maybe a thousand dollars, and material in the way of cable that could be four or five thousand dollars." They work under "minimal supervision" and on occasion are required "to work, not only on the public streets, but to go on the customers' premises."
 
 
 [3]
 Bell's policy was that "[n]ormally the discovery that a candidate for employment ... has committed any fraudulent or dishonest act prior to employment is cause for eliminating the candidate from further consideration for employment" (executive instructions concerning the Employee Fidelity Bond, note 1, supra ). Bell could obtain special individual coverage for employees who had committed such an act, but, for the obvious reason that there were enough applicants who had not committed such acts, never did
 
 
 [4]
 Under the Consent Decree, Bell established a list of 15 Affirmative Action program job classifications for which it set numerical objectives for the hiring of blacks. In 1972 Bell hoped to fill 40.42% of the 47 expected linemen openings with black applicants but in fact filled 46.67% of the 30 jobs that did open with black males. In 1973 Bell hoped to fill 39.40% of the expected 33 linemen openings with black applicants, and in fact filled 57.14% of the 21 positions that did open with black males
 
 
 [5]
 A part of Avant's deposition testimony reads:
 Q. At the time you completed that application, did you in fact list all convictions?
 A. At that time I did not list all convictions I had.
 Q. What other convictions did you have at that time that you did not list on this application?
 A. I think it was another speeding ticket, speeding violation, or running a red light or something. I don't remember specifically. And it was another petty larceny case involving a check.
 
 
 [6]
 Under McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff may establish a prima facie case of racial discrimination by showing
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 Id. at 802, 93 S.Ct. at 1824 (footnote omitted).
 
 
 [7]
 Avant does not challenge this holding
 
 
 [8]
 Avant alleges that Bell's security report showed nothing more than Avant's arrest and subsequent posting of bond. With only that information before it, Avant asserts that Bell thus refused to hire him because of his arrest and his posting bond. Because more blacks are arrested (and presumably more post bond for their release), he argues that such a hiring policy excludes more blacks than whites. Since the Trial Judge could properly find that Bell declined to hire Avant because of his prior conviction for petty larceny, we need not intimate any view on this disparate impact argument