807 F.2d 430
 42 Fair Empl.Prac.Cas. 1087
 Miguel Z. LOPEZ, Plaintiff-Appellant,
v.
CURRENT DIRECTOR OF TEXAS ECONOMIC DEVELOPMENT COMMISSION,
et al., Defendants-Appellees.
Miguel Z. LOPEZ, Plaintiff-Appellee Cross-Appellant,
v.
CURRENT DIRECTOR OF TEXAS ECONOMIC DEVELOPMENT COMMISSION,
et al., Defendants-Appellants Cross-Appellees.
Miguel Z. LOPEZ, Plaintiff-Appellee,
v.
CURRENT DIRECTOR OF TEXAS ECONOMIC DEVELOPMENT COMMISSION,
et al., Defendants-Appellants.
 Nos. 85-1323, 85-1458 and 85-1548.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 8, 1987.
 
 Richard W. Alexander, Fitzgerald, Meissner, Augustine & Alexander, Austin, Tex., for Lopez.
 Joseph W. Barbisch, Jr., Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex. for Current Director of Texas Economic Development Com'n.
 Appeals from the United States District Court for the Western District of Texas.
 Before GEE and HILL, Circuit Judges, and HUNTER*, District Judge.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 Miguel Z. Lopez brought suit against former and current officials of the Texas Economic Development Commission (TEDC) alleging that his discharge from and treatment during his employment at TEDC violated his constitutional rights secured by the fourteenth amendment and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. After a bench trial the district court rendered judgment for Lopez on part of his Title VII claim and for the defendants on all other claims. Both parties appeal adverse aspects of the judgment. Because the findings of fact and conclusions of law on Lopez's Title VII discharge claim lack the required specificity to permit effective appellate review, we vacate these findings and remand for the limited purpose of supplementing the findings of fact and conclusions of law. On the other issues raised in this appeal, we retain jurisdiction until the district court fulfills the directions of the remand.
 
 I.
 A.
 
 2
 Miguel Z. Lopez is a naturalized Hispanic American who in 1977 was working for the Wisconsin Department of Business Development. In early 1977 Lopez met two representatives of TEDC,[1] Al Rodriguez and Jim Richardson, who offered Lopez a position with TEDC in the Office of Minority Business Enterprises (OMBE). Lopez accepted a position as a coordinator for minority business opportunities with the understanding that his employment was contingent upon the continued availability of federal funding and satisfactory work performance. OMBE was and is a state program, funded completely by federal appropriations, that promotes the establishment and growth of minority-run businesses. During his tenure at OMBE Lopez received favorable evaluations from his supervisors for his job performance.
 
 
 3
 In late 1979 Lopez transferred to the International Trade Development Division of TEDC. The International Trade Division promotes bilateral trade initiatives between export-import businesses in Texas and foreign interests. Lopez worked as an international development consultant under A.F. Alagna who is one of the defendants in this action. While assigned to the International Trade Division, Lopez's position continued to be funded by federal appropriations to OMBE even though most trade consultants were paid with state funds. Lopez enjoyed some success as a trade consultant and received favorable work evaluations from Alagna.
 
 
 4
 In April 1980 federal funds to OMBE were reduced from $242,500 to $150,000. Lopez was transferred back to OMBE as part of a reorganization of that department undertaken by Shirley Shaw. Shaw had been charged with the job of reorganizing OMBE so that it could remain viable under the reduced funding allocation. The staff of OMBE was to be reduced to four persons. Shaw planned for one of the positions to be a combination OMBE-International Trade liaison. Basically, the position would entail working with International Trade in import-export and with the Insta-match Trade Directory which compiled Texas businesses interested in import-export activities. Lopez was asked about his interest in the position, and it appears he was reluctant to work with the Insta-match Directory even though he retained interest in international trade. Shaw also inquired as to Alagna's evaluation of Lopez for the new liaison position, and Alagna stated that he did not believe Lopez was qualified. Alagna's evaluation was based upon his opinion that Lopez could not effectively counsel interested manufacturers and businesses in the import-export area.
 
 
 5
 In late August 1980 Shaw, Alagna, then Executive Director of TEDC and defendant Gerald Brown, and Bud Reed, Shaw's supervisor, met and decided that Lopez should be terminated. Shaw had tabbed Juan Vasquez for the liaison position based upon her past working relationship with him. Vasquez came to OMBE from the Energy Division of TEDC.
 
 
 6
 On September 5, 1980, Lopez met with Brown and was informed that he was to be terminated as of October 1. Lopez and Brown, however, came to an agreement that Lopez would remain with TEDC until December 31, that Lopez would work informally for Alagna to finish up a project in international trade, and that Lopez could seek other employment while he continued working at TEDC. On September 25 Lopez met with Brown, Shaw, Alagna, and Reed to discuss his termination. Lopez complained that he was being treated arbitrarily, but the others replied that their decision was based upon their evaluations of his capabilities to fill the liaison position.
 
 
 7
 Lopez began work in the temporary position for Alagna in October 1980. His assignment was to complete a buyers' guide for foreign businesses interested in Texas' manufacturing and products. On November 6 Alagna sent Lopez a memorandum discussing the project and pointing out certain office policies of TEDC which Alagna believed Lopez was not following. Lopez responded on November 7 by requesting a grievance hearing for what he asserted was unfair treatment by Alagna and Brown. Following his November 7 response, Lopez met with Tim Schaffner, a defendant and assistant to Brown, regarding his grievance request. Schaffner unsuccessfully attempted to negotiate a compromise between Lopez and his superiors.
 
 
 8
 Lopez obtained legal representation in early December 1980 and attempted to gain access to his personnel files so as to retrieve work performance evaluations. Lopez and his attorney obtained evaluations from early 1980 but could not obtain his most recent evaluation because Schaffner, at the direction of Brown, represented to Lopez that his latest evaluation had been destroyed. While Schaffner had obtained state authorization to destroy the evaluations he actually had not, and never has,[2] carried out any destruction of TEDC personnel files. On December 15 Brown informed Lopez that his termination would be effective December 31, and Lopez left TEDC on that date.
 
 
 9
 Following his termination Lopez filed a grievance with the Equal Employment Opportunity Commission claiming he was terminated on the basis of racial discrimination. Subsequently, he was issued a right-to-sue letter, and he filed suit in May 1982.
 
 
 10
 In his suit Lopez alleged several claims arising from his termination and treatment at TEDC. He claimed: (1) a violation of Title VII, 42 U.S.C. Sec. 2000e-2, for unlawful termination on the basis of racial prejudice; (2) a violation of Title VII, 42 U.S.C. Sec. 2000e-3, for unlawful retaliation for filing a grievance complaining of racial discrimination; (3) a violation of 42 U.S.C. Sec. 1983 for denial of equal protection of the law; (4) a violation of 42 U.S.C. Sec. 1983 for denial of due process; and (5) a violation of 42 U.S.C. Sec. 1985(3) for a civil conspiracy to violate his constitutional rights.
 
 B.
 
 11
 When Lopez's suit came to trial the district court decided to hear all of Lopez's claims at one time, so it empaneled a jury to consider the sections 1983 and 1985(3) claims, while it intended to hear the Title VII claims. At the close of Lopez's case-in-chief, the defendants moved for a directed verdict. The district court granted the motion as to Lopez's 1983 and 1985(3) claims and dismissed them, finding that no jury question on these claims had been raised. After dismissing the jury, the district court heard the remainder of the case for Title VII purposes.
 
 
 12
 The parties at trial and now on appeal draw sharply conflicting conclusions from the evidence presented. Lopez strenuously argues that the evidence establishes a systematic scheme of racial discrimination carried out by the defendants. He asserts that officials at TEDC harbored strong anti-Hispanic feelings and prejudices and that they acted upon these prejudices when terminating him. He argues that his treatment at TEDC and his termination were capricious and violative of constitutional and Title VII provisions. The defendants contend that Lopez was treated fairly while he worked at TEDC and that the evidence supports this conclusion. They also assert that the evidence establishes their non-discriminatory reasons for terminating Lopez--a large cut in the federal subsidy supporting Lopez's position and Lopez's lack of qualifications for a new liaison position. Our review of the record indicates that the parties' conflicting characterizations of the evidence are based upon the credibility or non-credibility assigned to certain witnesses.
 
 
 13
 At the close of the Title VII evidence, the district court found: (1) that Lopez had not been terminated for racial reasons; (2) that Lopez had not been terminated in retaliation for filing an intra-agency grievance; and (3) that the defendants had violated Title VII by retaliating against Lopez for filing an intra-agency grievance complaining of racial harassment. The court found that Brown's and Schaffner's deception as to the destruction of Lopez's evaluations was the unlawful retaliatory act. The court awarded Lopez $24,000 as back pay damages for the retaliation and also awarded Lopez attorney's fees in the amount of $81,985 and expenses in the amount of $22,906.64.
 
 
 14
 Both parties appeal challenging adverse portions of the district court's judgment. Lopez complains that the district court erred in granting the directed verdict as to his sections 1983 and 1985(3) claims. Lopez also contends that the court's finding that defendants were not motivated by discriminatory intent when terminating him is clearly erroneous. The defendants cross-appeal claiming that the district court erroneously concluded that defendants had violated the Title VII prohibition against retaliation. The defendants also complain that the damage award is not supported by the evidence and that the award of attorney's fees is unreasonable and excessive.
 
 II.
 
 15
 At the end of the Title VII action the district court made the following singular finding in regard to Lopez's claim of discriminatory termination: "(8) Plaintiff's termination was not a result of retaliation, nor was it racially motivated." The other findings of fact do not detail the evidentiary basis for the court's statement. The conclusions of law, alternatively adopted as fact findings, do not expand upon the finding. Needless to say, this conclusionary finding frustrates our appellate review. The question of whether racial discriminatory intent exists is one of fact that is reviewed by an appellate court under the clearly erroneous standard. Anderson v. City of Bessemer City, 470 U.S. 564, 572-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518, 528 (1985); Hamilton v. Rodgers, 791 F.2d 439, 442 (5th Cir.1986); Fed.R.Civ.P. 52(a). Without sufficient findings of fact, we cannot apply this standard.
 
 
 16
 Fed.R.Civ.P. 52(a) provides that the trial court "shall find the facts specially." The purpose of the rule is (1) to engender care on the part of the trial judge in making factual determinations, (2) to make clear what was decided for purposes of res judicata and collateral estoppel, and (3) to make possible appellate review. Ratliff v. Governor's Highway Safety Program, 791 F.2d 394, 400 (5th Cir.1986).
 
 
 17
 After Lopez's Title VII claim received a trial on the merits, the district court was in the position of deciding the ultimate issue in all employment discrimination cases--did the defendant act with discriminatory intent? U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 713, 103 S.Ct. 1478, 1480-81, 75 L.Ed.2d 403; Smith v. Texas Dept. of Water Resources, 799 F.2d 1026, 1031 (5th Cir.1986). In resolving this ultimate question, the court decides whether the plaintiff has succeeded in persuading the trier of fact that a discriminatory reason more likely motivated the defendant or that the defendant's proferred explanation for the termination is not worthy of credence. Ratliff v. Governor's Highway Safety Program, 791 F.2d 394, 400 (5th Cir.1986). While the district court's finding embodies its answer to the ultimate question of discriminatory intent, it does not explain why or how it reached its finding. This lack of explanation is fatal under Fed.R.Civ.P. 52(a).
 
 As we have stated before:
 
 18
 If the trial court believes the employer's explanation of its motivation, the court may not merely state, in conclusory terms, that the plaintiff has failed to prove the employer's suggested reason to be a pretext for invidious discrimination or that there is no evidence of discriminatory treatment. It must at least refer to the evidence tending to prove and disprove the merits of the proferred explanation and state why the court reached the conclusion that the explanation has not been discredited.
 
 
 19
 Ratliff, 791 F.2d at 400-01 (footnotes omitted); see also Smith, 799 F.2d at 1031.
 
 We have also stated:
 
 20
 In reviewing the district court's finding of no discrimination under the clearly erroneous standard, this Court cannot be left to second guess the factual basis for the district court's conclusion. This Court cannot determine whether the district court's finding that plaintiff failed to demonstrate pretext was clearly erroneous when the district court's finding is not expressed with sufficient particularity. It is not the function of this Court to make credibility choices and findings of fact.
 
 
 21
 Redditt v. Mississippi Extended Care Centers, 718 F.2d 1381, 1386 (5th Cir.1983). See also Smith, 799 F.2d at 1031; Ratliff, 791 F.2d at 401; Sylvester v. Callon Energy Services, Inc., 724 F.2d 1210, 1216 (5th Cir.1984).
 
 
 22
 The singular finding of the district court is far too conclusory to meet the requirements and spirit of rule 52(a). The court fails to detail the evidentiary basis for its finding of no discriminatory intent. Such failure effectively negates our ability to apply the clearly erroneous standard of review. The correct application of the clearly erroneous standard requires that an appellate court be able to discern the evidentiary basis for a trial court's factual finding. See Hamilton v. Rodgers, 791 F.2d 439, 442 (5th Cir.1986). Only if the district court specifies which evidence it adopted and which evidence it rejected in making its finding can we properly and effectively apply the clearly erroneous standard.[3] The rule, of course, "exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness," but it does require findings that are explicit and detailed enough to enable us to review them under the applicable standard. Ratliff, 791 F.2d at 400. The district court's finding as to discriminatory termination does not comply with the above standard.
 
 
 23
 We must, therefore, remand this case to the district court for further findings. After reviewing the evidence, the district court is obviously "free to change, modify, or reassert" its conclusion on the ultimate question of discrimination in Lopez's termination, Redditt, 718 F.2d at 1386, so long as more explicit findings are made. Because the district court's revised findings of fact and conclusions of law could affect other issues raised in this appeal, we choose at this time not to express opinions as to these issues. We retain jurisdiction over these issues while the trial court supplements the record with new findings of fact and conclusions of law on the discriminatory termination claim.III.
 
 
 24
 The district court's findings of fact and conclusions of law as to Lopez's discriminatory discharge claim are VACATED and the cause is REMANDED for the limited purpose of making further findings. The supplemented record will then be referred to this panel which retains jurisdiction except for the limited remand.
 
 
 
 *
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [1]
 In 1977 TEDC was known as the Texas Industrial Commission
 
 
 [2]
 Lopez's attorney obtained a temporary restraining order prohibiting the destruction of personnel files of TEDC employees
 
 
 [3]
 While the clearly erroneous standard is an extremely deferential standard of review, see Hamilton v. Rodgers, 791 F.2d 439, 442 (5th Cir.1986), it does require that the district court adopt at least a plausible interpretation of the evidence. Anderson v. City of Bessemer City, 470 U.S. at 572-75, 105 S.Ct. at 1511-12, 84 L.Ed.2d at 528. Clearly then, if a district court fails to enunciate the basic evidentiary support for its findings we cannot say the finding is plausible and thus not clearly erroneous